# The Farmers' Mutual Insurance Co. *versus* Taylor for the use of Grow.

1. An application was made to the agent of an insurance company for a risk of $4000; the agent in forwarding the application said if the company would not take $4000, he would place $1000 in another company of which he was agent; the secretary said he would take but $3000, which was placed in the first company and $1000 in the other, both policies being issued at the same time: the conditions of first company avoided the policy unless other insurance were *immediately* notified to the secretary and endorsed on the policy; eight months after and before any loss, the *agents* endorsed the other insurance on the policy and notified the company, who made no objection; the agents wrote policies for the company, to be countersigned by the agents. *Held,* in an action to recover for a loss, there was evidence for the jury that the company had notice of the additional insurance when their policy was issued.

2. The company could not with knowledge of the facts retain the premium and withhold their objections till after a loss.

3. A policy was to be void if assigned without the written approval of the secretary. It was assigned and an approval signed by the agent "for secretary;" the agent was accustomed to approve assignments and report monthly to the company on blanks furnished for that purpose by the company; this assignment was immediately reported in addition to the monthly reports. *Held,* that the policy was not avoided after loss, by the assignment.

4. The agent informed the secretary the next day after the loss. This was sufficient notice.

5. A statement of loss may be waived by the company, and if there be evidence from which a waiver may be inferred it is for the jury. Evidence of waiver in this case sufficient to go to the jury.

6. If a company expressly gives an agent powers outside his written authority, or encourages him to exercise them for a long time and ratifies them, so as to induce the public to rely on his enlarged agency, they cannot after a loss fall back upon his written authority to avoid acts done by their encouragement in the general scope of the business.

7. The public is justified in presuming that such continued acts are within the agent's authority.

8. The acts and declarations of the general agent and adjuster of an insurance company in the scope of his employment communicated to the insured, are admissible in evidence.

March 11th 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Susquehanna county*: No. 133, to January Term 1873.

This was an action of covenant on a policy of insurance brought July 20th 1870, by David Taylor to the use of F. P. Grow against the Farmers' Mutual Fire Insurance Company, to recover for loss sustained by the plaintiff by the burning of his property insured by the defendants.

The cause was tried April 16th 1872, before Morrow, J.

C. L. Brown testified that he and Billings Stroud were agents for the defendants in 1868, and had been for some years.

Stroud testified that he had been their agent for some years before Brown was united with him.

Both witnesses then proved the policy which was issued October 8th 1868, from the defendants to D. Taylor, Jr., and which was given in evidence, to wit:—

" The Farmers' Mutual Fire Insurance Company of Penn-sylvania, by this policy of insurance, in consideration of seventy dollars, &c., do insure David Taylor, Jr., of Owego, &c., against loss or damage by fire, to the amount of three thousand five hundred dollars, on the following property as described in application and survey No. 34,618, which is hereby declared to be part of this policy and a warranty on the part of the assured, viz.: On his frame hotel building, with hall, woodhouse and kitchen attached, situate detached in Glenwood, Susquehanna county, Penn., $3000. On his frame hotel barn, &c. ' Other in-surance in Lycoming of $1000, in Imperial of London $1000.'

Stroud & Brown."

" And the said company do hereby promise and agree to make good, &c., all such immediate loss or damage, &c., to be paid within three months after notice, proof and adjustment thereof, in conform-ity to the conditions annexed to this policy : Provided always, that in case the assured shall already have any other insurance against loss by fire on the property hereby insured, not notified to this company, and mentioned in or endorsed upon this policy, then this insurance shall be void and of no effect; and the assured hereby covenants and engages that the representation given in the application for this insurance is a warranty on the part of the as-sured, &c.

" And that if any fact or circumstance shall not have been fairly represented ; or if the said assured, or his assigns, shall hereafter make any other insurance on the same property, and shall not give immediate notice thereof to the secretary and have the same endorsed on this instrument, or otherwise acknowledged by him in writing, then this policy shall cease and be of no effect. * * *

" *And it is moreover agreed and declared*, that this policy is made and accepted in reference to the application, also the con-ditions hereto annexed, which are hereby made a part of this policy, and to be used and resorted to, in order to explain the rights and obligations of the parties hereto.

" This policy shall not be valid until countersigned by the duly authorized agent at Montrose, Pa.

" In witness whereof, the said Farmers' Mutual Fire Insurance Company have caused these presents to be sealed with their seal, and signed by their President and Secretary, at their office, in York, Pennsylvania.　　H. Kraber,　　　D. Stickler,

　[L. S.]　　　　　　　President.　　　　　Secretary.

" Countersigned at　　this　　day of　　A. D. 186　　Agent.".

[Farmers' Insurance Co. *v.* Taylor.]

" CONDITIONS OF INSURANCE.—* * * * * * * * *

" 6. This policy shall not be assignable in whole or in part, without the written approval of the secretary, and in case of any transfer of interest in this policy, or any part thereof, either by sale or otherwise; or if the property herein insured, or any part of it, shall be transferred by any contract, or any change of partnership or ownership, whether prior or subsequent to any loss or damage to the property insured, without the written consent of the secretary, this policy shall thenceforth be void. * * *

" 9. In any case where the consent of this company is granted to a transfer of the policy as collateral security, then in case of loss or damage by fire to the subject insured, the assured party, and not the mortgagee or assignee, is required to make the requisite proofs of loss.

" 10. Persons sustaining loss or damage by fire, shall forthwith give notice thereof, in writing, to the secretary of the company, and as soon after as possible shall deliver a true copy of the written part of the policy, with the endorsements thereon (if any) and a particular account of the loss or damage; and they shall accompany the same with their oath or affirmation; declaring the said account to be true and just; showing also what other insurances (if any) have been made on the same property, and giving a copy of the written portion of the policy of each company with the endorsements thereon. * * *

" And said company shall in no case be deemed to have waived a full, literal and strict compliance with, and performance of each and every of the terms, provisions, conditions and stipulations in this policy contained, and hereto annexed, to be performed and observed by and on the part of the insured, and every person claiming by, through or under them, unless such waiver be express, and manifested in writing, under the signature of the secretary of said company."

This assignment, endorsed on policy, was admitted by the court after objection by defendants that it was without the approval of the secretary, after hearing the evidence on the subject, as hereafter stated, and sealing a bill of exceptions:—

" For value received, I hereby transfer, assign and set over unto F. P. Grow and his assigns, all my title and interest in this policy, and all advantage to be derived therefrom.

" Witness my hand and seal this 14th day of November 1866.

"DAVID TAYLOR, Jr.     [SEAL.]

" Sealed and delivered in presence of          Approved.

"DAVID TAYLOR.          STROUD & BROWN, for Secretary."

Stroud testified: " We had authority to make transfers and inform the company of what we had done in our monthly reports—made first of each month. We made these transfers for three or

[Farmers' Insurance Co. *v.* Taylor.]

four years and reported to the company, and our reports were approved. If not, they called our attention to such matters as they would not approve. I think I signed assent of secretary, to policy before this. We reported this to the company the day of the date of this assignment, our books will show. Think it was written authority to make these assignments."

C. L. Brown testified: "This is my signature, approving this assignment. They sent us blanks to fill out, making reports of such assignments as this. This assignment was reported and no objection made until after the fire. We were in the habit of making such assignments as this, and report to the company. They were not blanks for making monthly reports, but for reports of cases where we approve assignments. This case was reported to the company. I notified the company the same day I approved of the assignment. It was the 21st of November 1868. The notice was by mail."

The agents' certificate of appointment was as follows:—

"No. 92.                              Stroud & Brown, Agents.
"The Farmers' Mutual Life Insurance Co., of York, Penn'a.

"This certifies, That Messrs. Stroud and Brown, of Montrose, county of Susquehanna, and state of Pennsylvania, have been duly appointed as agents of The Farmers' Mutual Fire Insurance Company, of York, Pa., and are authorized to receive applications, premium-notes and cash premiums for said company, agreeably to the by-laws and instructions given and furnished to them by said company, from time to time, through their secretary or general agent. This authority of the said Stroud & Brown, nevertheless, is subject at all times to be revoked by the president or secretary of the said company."

The application for the insurance described the property as set out in the policy.

To the 12th interrogatory accompanying the application, to wit, "Is the property insured?" the answer was, "No."

Following the application are these clauses:—

"And the undersigned applicant for the proposed insurance hereby covenants and agrees with this company, in case of loss, to adjust the same in accordance with the by-laws of the company, and the conditions of the policy and application. * * * Dated Glenwood, September 22d 1868.    DAVID TAYLOR, Applicant,
"STROUD & BROWN, Agent.              per Cafferty.

"The following questions must be answered fully and definitely by the agent, and when this is not done the application will be declined.

"1. Has this company any other insurance in this building? If so, for whom and what amount? No.
* * *                              STROUD & BROWN, Agent."

The plaintiff then gave evidence of the destruction of the

[Farmers' Insurance Co. *v.* Taylor.]

property by fire on the 18th of March 1870, and that the property destroyed was worth about $8000.

F. P. Grow the use-plaintiff testified, that E. R. and F. P. Grow built the buildings and sold the premises to A. F. Snover. They took a judgment for $3599.80, part of the purchase-money, to April Term 1856, which was revived against Snover October 9th 1865. Snover sold to J. Cafferty and wife; the deed was dated October 23d 1865; he took a judgment-note from them payable in instalments, for $4815, "in part payment of Glenwood hotel, on which E. R. and F. P. Grow had judgment, and defendant in Snover's judgment had a right to pay Grows;" judgment was entered on the note October 23d 1865.

On the 20th of February 1867, this judgment was assigned by Snover to E. R. and F. P. Grow. About the same time Cafferty and wife sold to D. Taylor, Jr. By an amicable scire facias between the Grows plaintiffs, and Cafferty and wife and D. Taylor, Jr., defendants; the Cafferty judgment to Snover was revived September 29th 1870.

The policy was assigned by Taylor to Grow to secure the judgment to E. R. and F. P. Grow, and whatever the parties owed them; at the time of the assignment Taylor owed them $5500.

The plaintiff gave evidence that B. F. Walker was in 1870 the agent and general adjuster of the defendants.

Plaintiff offered to prove, by C. L. Brown the agent for defendant and others, that Grow informed him of the fire immediately after it occurred; that he accepted the information, and communicated the fact at once, by letter, to the secretary of the company; that soon after, and in consequence of said information, the company sent Walker, who was their general adjusting agent (having power to settle and pay losses), to Glenwood. That he examined the premises, the parties, &c., and informed plaintiff that he was satisfied, and would pay the policy. Then he (Walker) went to Owego, and there made up the formal proofs, for and with Taylor (the assured), and then he informed the Montrose agent (Stroud) that Taylor had made all the necessary proofs. That he would pay it. Stroud at once informed plaintiff of this, and that no further proofs were necessary: plaintiff rested upon this.

Defendant objects to the offer, on the ground that the notice of loss and preliminary proofs, being in writing, are the best evidence, and it is within the power of the plaintiff to offer the written notices and proofs.

The offer was admitted, and a bill of exceptions sealed for defendants.

Brown testified that he received from Grow notice of the loss, and notified the company of it by letter by the next mail, addressed to the secretary, and that on the 31st of March Walker came to the office of Stroud & Brown, and said they had received

the notice and that he came to adjust the loss; he went next day with a letter of introduction from witness to Grow; witness showed the policy to Walker when he came to their office.

F. P. Grow testified that Walker came to their place April 5th and made inquiries about the property; after witness had answered his inquiries he said he did not see why the loss should not be paid; told witness to get the policy from Stroud & Brown, and when he received the check to endorse the payment on the policy; he asked witness to deduct the interest; he consented to deduct six per cent. Walker said he was the defendants' general agent, and had come to adjust and pay the loss.

Stroud testified that Walker told him that he had got the proofs of Taylor's loss, that they were all satisfactory, and they would pay the loss immediately; witness told Grow of this. Walker previously to that time had settled and adjusted other losses in connection with the agency of Stroud & Brown, who were the agents of the defendants, and had made the contract of insurance; took the application, fixed the rates, forwarded to the company and received this policy.

For the defendants, Brown testified that an application for $4000 was first sent to defendants, with a suggestion that, if they would not carry so much, $1000 might be put into another company; the $1000 was put into the Lycoming, and the policy for $3000 by defendants and $1000 by the Lycoming took effect the same day. On the 10th of July 1869, Cafferty wanted more insurance; witness then took the risk for $1000 in the Imperial, and notified the defendants and the Lycoming; the words "other insurance in the Lycoming" were then written on this policy; Stroud & Brown had letters recognising acts done by them beyond the authority in their certificate of appointment; the application was forwarded to the defendants before the policy issued; it was to take effect October 23d, when all previous policies expired; when the words were added on July 10th 1869, Stroud & Brown wrote policies for the defendants, and had for several months previously; Walker knew what had been written on the policy when he was at Stroud & Brown's after the fire; the application was first for $4000; when returned, and the secretary said they would take but $3000, witness struck out "$4000," and wrote "$3000." The "Imperial" policy was issued by Stroud & Brown; the Lycoming issued their policy.

Stroud testified for the plaintiff in rebuttal, that he had knowledge of Grow's encumbrance from the time that Snover had insured down; and that the property was insured for the purpose of having the insurance assigned for Grow's benefit.

The following were points of defendants:—

2. The plaintiff having stated in his application that there was no other insurance on the property, and the undisputed evidence

being that there was other insurance, the policy issued on that application was void, and the plaintiff cannot recover.

3. The clause in the policy relative to the delivery of preliminary proofs of loss must be strictly complied with, and the declaration of Walker, the travelling agent or adjuster, that he had received the proofs, and they were all right, is not sufficient evidence of compliance with that clause of the policy nor a waiver of the same on the part of the company.

4. Stroud & Brown had no authority to endorse on the policy an approval of subsequent insurance, nor assent to a transfer of the policy to Grow.

5. Subsequent insurance, or insurance obtained upon the same day upon the property, having been obtained without the written consent of the defendants, the policy is void; and the memorandum endorsement of Stroud & Brown on the face of the policy after it was delivered to Taylor, and nearly one year after the date of the Lycoming policy, did not cure this defect.

The court after giving a synopsis of the evidence said:—

"1. [If the jury believe the evidence of F. P. Grow as to the fact that he took the assignment of the policy to secure the payment of the judgment which he and his brother held against Cafferty and wife, and that Taylor, the owner of the property, was to pay it, he and his brother had such an interest in the property, that the policy in their hands as assignees was not made void, but was good and valid, and a recovery in this case can be had, if at all, in the name of F. P. Grow, the equitable plaintiff.]

"2. [If the jury believe that Stroud & Brown had authority to make transfers of policies for this company and inform the company thereof in their monthly reports, as testified to by Stroud, and did approve of this assignment and report the same to the company, and the company acquiesced in it, the assignment was binding upon the company, for the reason that what the company did by its authorized agents was the act of the company itself.]

"3. [If the jury believe that Mr. Brown, agent of the defendants, received notice of the loss by fire from Mr. Grow at the time mentioned by him, and communicated it to the company by next mail, and B. F. Walker was general agent or adjuster for the company, and that he called on Brown about the 31st March 1870, examined the policies, afterwards examined the premises, and then went to Owego, and took the proofs of loss of Taylor, as testified to by Stroud, it was a waiver on the part of the company, of what was required of the assured by item 10 of the 'conditions of insurance,' as printed on the policy. In other words it had the same effect in law as if Grow or Taylor, or both, had done all that is required in said 10th item.]

"4. [The application and the policy must be considered together. They form but one contract, and hence if the jury be-

lieve the evidence of Brown, that at the time the application was made and forwarded, he informed the company that Taylor would like to be insured in the sum of $4000, but if they were unwilling to carry that amount, he would put $1000 in another company, that the application was returned to him, with the information that they would take $3000, and it was changed accordingly, and sent back, and the policy was issued in pursuance of the amended application, and an insurance of $1000 was placed upon the property in another company, viz.: the Lycoming —this last insurance did not invalidate the policy of the defendants. It cannot be said that it was a prior insurance, neither was it a subsequent one, Both took effect at the same time, and in pursuance of an understanding to that; effect. If the defendants had notice that the sum of $1000 was to be put upon the property in another company, it would not be necessary to give immediate notice thereof to the secretary, and have the same endorsed on the policy, or otherwise acknowledged by him in writing, in order to keep the policy issued by the defendants in full force and effect. It would be useless to give the defendants notice of what had been done, when they knew beforehand it was to be done.]

"5. [If the jury believe that Stroud & Brown on the 10th of July 1869, were the agents of the defendants, and had authority to write policies for the defendants, and at that time took in good faith a risk in the Imperial of London for $1000, and wrote upon the face of the policy issued to Taylor, as follows:

"'Other insurance in the Lycoming,    $1000
"  "  Imperial of London,   $1000'

and notified the defendants of what they had done, it did not invalidate and made void the policy in question. If they had authority to write policies, their act in this case bound the company, and it was not necessary for the assured to give 'immediate notice' to the secretary of the subsequent insurance.

"Finally, if all the evidence in the case is believed, the jury would be justified in finding for the plaintiff under these instructions; but if the evidence fail to establish each and all the points to which your attention has been specifically called, then the verdict should be for the defendants.

"If you find for the plaintiff, your verdict should be for $3000, with interest for three months after 'notice, proof and adjustment of loss.']

"We refuse to affirm the defendants' 2d point, for the reasons given in the general charge.

"The 3d point is denied, provided the jury find that the notice, proof and adjustment of loss were made as claimed by the plaintiff; otherwise the point is affirmed. The plaintiff does not rely on the declaration of Walker alone, and the jury should take into

[Farmers' Insurance Co. v. Taylor.]

consideration all the evidence as to whether he was the agent for the adjustment of this loss. If the jury find he was, the plaintiff was relieved from that clause in the policy relative to the delivery of preliminary proofs of loss. If the jury find he was not the agent, this point is affirmed, and the plaintiff cannot recover.

" The 5th point depends upon questions of fact submitted to the jury in our general charge. If the jury find that Stroud & Brown had authority to write policies for this company, also to approve of the assignment of policies, and did approve of this assignment, and give notice to the company, &c., this point is denied —otherwise it is affirmed.

" We refuse to charge you as requested in the defendants' 6th point, for the reasons that the question whether the subsequent insurance, or insurance obtained the same day without the written consent of the defendants, and the effect of the memorandum by Stroud & Brown on the face of the policy, depends upon questions of fact, which we have submitted to you in our general charge."

The verdict was for the plaintiff for $3329.50.

The defendants took a writ of error and assigned 11 errors.

1. Admitting the assignment of Taylor to Grow in evidence.

2. Admitting the testimony of Brown in relation to notice to the company, the acts of Walker, &c.

3–7. The parts of the charge in brackets.

8–11. The answers to the points.

*W. D. Lusk*, for plaintiffs in error.—The authority of Stroud & Brown could not be shown by parol: Jordan *v.* Stewart, 11 Harris 248. Secondary evidence cannot be given of contents of papers without proving their loss: Carland *v.* Cunningham, 1 Wright 228. There must be knowledge to establish a waiver : Diehl *v.* Adams Co. M. Ins. Co., 8 P. F. Smith 443 ; Elliott *v.* Lycoming Ins. Co., 16 Id. 22. As to 3d error, a judgment-creditor has no interest in his debtor's estate : Grevemeyer *v.* Southern M. Ins. Co., 12 P. F. Smith 340. The right to recover is in the legal party, not in those entitled to the money : Irish *v.* Johnston, 1 Jones 487 ; Armstrong *v.* Lancaster, 5 Watts 68 ; Pierce *v.* McKeehan, 3 Barr 136. The assignment being without the consent of the company was void : Smith *v.* Saratoga M. Ins. Co., 1 Hill 497 ; s. c. 3 Id. 508 ; Ferree *v.* Oxford Ins. Co., 17 P. F. Smith 373 ; Carpenter *v.* Washington Ins. Co., 16 Peters 495. Notice of loss should have been given to the secretary in writing : Lycoming Ins. Co. *v.* Updegraff, 4 Wright 311. The application is a warranty that its statements are correct: Sayles *v.* N. W. Ins. Co., 2 Curtis 612. Parol notice does not fulfil a condition, requiring additional insurance to be endorsed in writing on the policy : Levitt *v.* Western M. & F. Ins. Co., 7 Rob. (La.) 351 ; Barrett *v.* Union

[Farmers' Insurance Co. v. Taylor.]

M. Ins. Co., 7 Cush. 175 : Forbes v. Agawam M. Ins. Co., 9 Id. 470 ; Pendar v. American Ins. Co., 12 Id. 469 ; Lehigh Co. v. Harlan, 3 Casey 430.  Stroud & Brown had no authority to note the insurance of the Imperial and the Lycoming on the policy: Brander v. Cola. Ins. Co., 2 Grant 470 ; Wilson v. Genesee Mut. Ins. Co., 4 Kernan 418 ; Insurance Co. v. Johnson, 11 Harris 72 ; Mitchell v. Lycoming Ins. Co., 1 P. F. Smith 402.

*R. B. Little,* for defendant in error.—The presumption is that the company ratified the acts of their agent: 3 Phillips Ev. 185 ; Ackland v. Pearson, 2 Campb. 601.  The authority to the agents need not be in writing: Story on Agency 52, 55 ; Conover v. Mutual Ins. Co., 3 Denio 254 ; Insurance Co. v. Smith, 1 Jones 120.   The acts of the company, &c., were a waiver : Inland Ins. Co. v. Stauffer, 9 Casey 404 ; Com. Ins. Co. v. Sennett, 5 Wright 164 ; Franklin F. Ins. Co. v. Updegraff, 7 Id. 350 ; Flanders on Ins. 541, 542.   Waiver may be by the adjusting agent: Post v. Ætna Ins. Co., 43 Barb. 351 ; Taylor v. Merchants' Ins. Co., 9 Howard 390 ; Lycoming Ins. Co. v. Schreffler, 6 Wright 188 ; Buckley v. Garrett, 11 Wright 212.   A general agent for effecting insurances has full power to insure, to renew and to receive notice of other insurances : Carroll v. Charter Oak Ins. Co., 40 Barb. N. Y. 292 ; Post v. Ætna Ins. Co., 43 Id. 351 ; Beal v. Park Fire Ins. Co., 16 Wis. 241 ; Gloucester Man. Co. v. Howard F. Ins. Co., 5 Gray 497.

The opinion of the court was delivered, May 17th 1873, by

MERCUR, J.—A question as to the validity of the policy is raised at the threshold of this action.   It is contended that it is void by reason of the omission of the assured to give notice in his written application, of another insurance upon the same property, and to have it endorsed upon the policy.   If this notice was not given to, or waived by, the company, such would be the effect.   What are the facts ?

Stroud and Brown, who resided at Montrose, were the agents of the company at the time this risk was taken, and had been for some three years prior ; they made the contracts of insurance, fixed rates, took applications, and forwarded the same to the company.   Stroud had also been an agent for the company for three or four years preceding their joint agency.   They were also agents for the Lycoming Insurance Company.   There was an existing insurance upon the same property in each, the Farmers' Mutual and the Lycoming, which was to expire the 23d of October 1868 ; for what sum does not appear.   September 22d 1868, Taylor, by his agent Cafferty, applied to Stroud & Brown for an insurance of $4000 upon the property in the Farmers' Mutual, to take effect

upon the said 23d of October. Stroud & Brown forwarded the application to the secretary of the company, at the same time saying, if the company would not like to carry $4000, they could place $1000 or $1500 in the Lycoming, and would do so. The secretary replied, that he would not take the $4000, but would take the $3000. Thereupon the $4000 was changed by Stroud & Brown to $3000 in the application, and this policy was issued to Taylor for $3000, and another by the Lycoming for $1000, both to take effect upon the 23d of October 1868. The $1000 taken in the Lycoming was not mentioned in the policy, upon which this suit is brought, at the time it was issued. Strictly speaking, this insurance of $1000 was neither prior, nor subsequent, to the one taken by the plaintiff, but was concurrent. It took effect and became operative at the same time. Thus the company was notified by its own agents, that they would, if desired, take $1000 or $1500 in the Lycoming; but the reply of the secretary was in effect requesting it to be $1000, and that the plaintiff would take the residue of the $4000. The risks were both taken in accordance therewith. Subsequently, but more than eight months prior to the loss, " other insurance in the Lycoming of $1000" was written in the policy by Stroud & Brown, as agents for the company, and they notified the company of it. The defendant then made no allegation of the absence of the previous notice, nor any objection to this addition to the policy. Besides, at the time of this addition, and for several months previous, these agents wrote the policies for the company; and a clause in the policy stipulated that it should not be valid until countersigned by its only authorized agents at Montrose.

The property insured was of the value of about $8000. So far as it appears, the defendants were entirely satisfied with the acts of their agents. If the company was dissatisfied then was the time to have indicated it. If they desired to repudiate the policy, then was the time to have done so. They could not, after a full knowledge of the facts, retain the money paid for the insurance, and withhold their objections until after the loss, thereby inducing the assured to rely upon the validity of his policy. The evidence then was sufficient to submit to the jury to enable them to find that the company had actual notice of this additional insurance at the time they issued their policy, and that it was entered in writing upon the policy by the agent, and with the knowledge of the company, some eight months prior to the loss.

Next in chronological order was the assignment of the policy from Taylor to Grow. That there was sufficient consideration between them to support this assignment does not admit of a doubt. It is assailed, however, upon the alleged ground that immediate notice thereof was not given to the secretary, and the same endorsed upon the policy, or otherwise acknowledged by him in writing.

[Farmers' Insurance Co. *v.* Taylor.]

What are the facts ? The assignment given in evidence, is written upon the policy, and immediately under the name of the subscribing witnesses thereto is signed " Stroud & Brown, for secretary." That was the manner in which they indicated their approval of the assignment. They testified that they were accustomed to make such assignments and report the same to the company, and had done so for three or four years. That the company sent them blanks to fill out to make reports of such assignments as this, executed with their approval. That this assignment was reported by them to the company upon the same day of its approval. This was the 21st of November 1868. The loss was on the 18th of March 1870. The report of this assignment was in addition to the monthly reports, which they made upon the first of each month to the company. We see no error in the third and fourth assignments.

The fifth and ninth assignments of error relate to the notice and proofs of loss. The uncontradicted evidence is, that Grow gave notice to Stroud & Brown, who, by the next mail, informed the company by letter addressed to the secretary. Such notice is sufficient: West Branch Ins. Co. *v.* Helfenstein, 4 Wright 490. In response to this notice, Walker, who was the general agent and adjuster of the company, came to Montrose, March 31st 1870. He called upon Stroud & Brown, inquired in regard to the fire, and said he came to adjust the loss. Upon the 5th of April he went to the place of the loss, saw Grow, had full conversation with him in regard to the property, insurance and loss. He told Grow that he came as the general agent of the company, to adjust, and to pay the loss, and did not see any reason why it should not be paid. He asked to have the interest deducted, and Grow agreed to deduct six per cent. Walker then left, saying he would go to Owego, see Taylor, and there take the proofs of the loss. A few days thereafter Walker told Stroud that he had gotten the proofs of Taylor, and they were all satisfactory, and they would pay the loss immediately. Stroud informed Grow of all this, and told him not to be uneasy, that the company would settle the loss. Grow relied upon this assurance. No evidence was given to contradict these facts, nor the presumption that the proofs were actually made as stated by the adjuster. If not made, the jury found the company waived them. The evidence justified the finding: Shaw *v.* Turnpike Co., 2 P. R. 454; Lycoming Ins. Co. *v.* Schreffler, 6 Wright 188. A particular statement of the loss may be waived by the company, and if there be any evidence from which such a waiver may be inferred it is for the jury: Franklin Fire Insurance Co. *v.* Updegraff *et al.*, 7 Wright 350; Buckley *v.* Garrett, 11 Wright 205, and cases there cited. It follows that the court did right in submitting these facts to the jury, and we discover no error in the manner of their so doing.

23 P. F. Smith—23

[Farmers' Insurance Co. *v.* Taylor.]

If an insurance company will confine the business of its agents within the limits of the special written authority given to them, it has a right to ask that it shall not be bound by any act of the agent not warranted thereby. If, however, the company itself ignores that special authority; if, outside and beyond it, it either expressly gives, or encourages an agent, to exercise great additional powers, for several years; and ratifies and confirms the same, thus holding him out to the world as rightfully exercising all those powers, thereby inducing the public to believe in, and to rely upon, his said enlarged agency, the company cannot, after a loss has occurred, repudiate his action, and fall back upon the written authority for the purpose of avoiding the legal effect of those acts, which he has done by their encouragement in the general scope of the business. The public do not see the written authority, but they do see the acts which the agent does. They know that the company ratifies them. They then have a right to presume such continued acts are within the scope of his authority, and to act upon such presumption. Such a rule is necessary to protect the people, who are obliged to transact business relating to insurance remote from the main offices of insurance companies.

The fact that Walker was the general agent and adjuster of the company, was unquestioned. His acts and declarations connected therewith, in the general scope of his employment, and communicated to Grow, were correctly received in evidence. The non-production of the written proof of loss by the plaintiff below, under the other evidence, was not fatal to his cause of action.

We think the learned judge, upon the whole, submitted the case correctly to the jury.

Judgment affirmed.